UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE PETERSEN,<br><br>        Plaintiff,<br><br>  v.<br><br>ANTHONY SIMS, JR. and NICHOLAS TORRES,<br><br>        Defendants. | No. 1:19-cv-00138-DAD-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT:<br><br>DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 46)<br><br>PLAINTIFF'S MOTION TO FILE A SURREPLY BE DENIED<br><br>(ECF No. 61)<br><br>PLAINTIFF'S MOTION REQUESTING THAT THIS COURT RECONSTRUE THIS ACTION AS AN ACTION UNDER 42 U.S.C. § 1983 OR ALLOW PLAINTIFF TO AMEND BE DENIED<br><br>(ECF No. 62)<br><br>PLAINTIFF'S MOTION TO AMEND COMPLAINT BE DENIED<br><br>(ECF No. 65)<br><br>PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE BE DENIED<br><br>(ECF No. 93)<br><br>TWENTY-ONE DAY DEADLINE |

1

1    Plaintiff Kyle Petersen, a federal prisoner proceeding *pro se* and *in forma pauperis*, filed
2    the complaint commencing this *Bivens* action on January 31, 2019. Plaintiff's third amended
3    complaint, (ECF No. 9), and the supplement thereto, (ECF No. 13), allege that Defendants
4    Anthony Sims, Jr. and Nicholas Torres, both federal agents, violated Plaintiff's Fourth
5    Amendment rights by conducting forensic searches of Plaintiff's cell phones. Before the Court
6    are Defendants' motion to dismiss (ECF No. 46), Plaintiff's motion to file a surreply with respect
7    to Defendants' motion to dismiss (ECF No. 61), Plaintiff's motion to reconstrue this action as one
8    under 42 U.S.C. § 1983 or to amend the complaint (ECF No. 62), Plaintiff's motion to amend the
9    complaint (ECF No. 65), and Plaintiff's request for judicial notice (ECF No. 93).

10   Defendants' motion to dismiss argues that there is no *Bivens* remedy for Plaintiff's claims
11   and that they are entitled to qualified immunity. (ECF No. 46). Plaintiff filed an opposition and a
12   supplement thereto on May 8, 2020, (ECF Nos. 54, 55), and Defendants filed a reply brief on
13   May 15, 2020. (ECF No. 56). On June 15, 2020, Plaintiff filed a motion to file a surreply. (ECF
14   No. 61). Defendants filed an opposition on July 6, 2020, to the motion to file a surreply. (ECF
15   No. 64).

16   In addition, Plaintiff has filed two motions related to changing the nature of this lawsuit.
17   On June 15, 2020, Plaintiff filed a motion to reconstrue this action as an action under 42 U.S.C.
18   § 1983 or to allow Plaintiff to amend. (ECF No. 62). On July 10, 2020, Plaintiff filed a motion to
19   amend his complaint. (ECF No. 65). Defendants filed oppositions to both motions (ECF Nos. 64,
20   68), and Plaintiff filed reply briefs to both oppositions (ECF Nos. 67, 69).

21   On January 5, 2021, the District Judge stayed this action pending the result of Plaintiff's
22   underlying criminal appeal. (ECF No. 81, *see* ECF No. 79). After the Ninth Circuit affirmed,
23   *United States v. Peterson*, 995 F.3d 1061, 1063 (9th Cir. 2021), *cert. denied*, No. 21-5748, 2021
24   WL 5167892 (U.S. Nov. 8, 2021), this Court entered an order on June 10, 2021, directing the
25   parties to file supplemental briefs addressing the effect, if any, of the decision. (ECF No. 88).
26   Both parties filed supplemental briefs stating that the Ninth Circuit's decision did not affect the
27   pending motion to dismiss. (ECF Nos. 91, 92).

28   On November 8, 2021, Plaintiff filed a request for judicial notice, asking the Court to

judicially notice certain facts, presumably in connection with the pending motion to dismiss. (ECF No. 93). Defendants did not file any response to this request. Accordingly, the matters addressed in these findings and recommendations are now ripe for decision.

For the following reasons, the Court recommends: (2) granting Defendants' motion to dismiss, (2) denying Plaintiff's motion to file a surreply, (3) denying Plaintiff's motions to reconstrue this action as one under § 1983 or to grant leave to amend the complaint, and (4) denying Plaintiff's request for judicial notice.

Plaintiff has twenty-one (21) days from the date of service of these findings and recommendations to file his objections.

## I. SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff alleges that on April 1, 2017, he was released from prison to a parole term of three years. (ECF No. 13, p. 2). As part of his parole, Plaintiff signed a notice and conditions of parole, which included the following condition:

> You, your residence, and any property under your control are subject to search and seizure by a probation officer, an agent or officer of the California Department of Corrections and Rehabilitation, or any other peace officer at any time of the day or night, with or without a warrant with or without cause.

(*Id.*). Plaintiff was also prohibited from possessing a cell phone with internet access or a camera. (*Id.*)

### A. Seizure and Search of Unimax Cell Phone

On May 23, 2017, Plaintiff's parole agent, with the assistance of agents from the U.S. Department of Homeland Security Investigations (HSI), conducted a warrantless parole search of the sober living home in which Plaintiff was living. (*Id.*). During the search, a Unimax cell phone with internet access and a camera was found in Plaintiff's room. (*Id.*). Plaintiff's parole agent searched the Unimax cell phone and allegedly found "several images of children naked." (*Id.*). Plaintiff was placed in custody and booked into Kern County jail on a parole hold. (*Id.*).

On May 26, 2017, the Unimax cell phone was forwarded to HSI Special Agent, Defendant Nicholas Torres, for forensic analysis. (*Id.* at 3). On that same day, Defendant Torres forwarded the cell phone to HSI Special Agent, Defendant Anthony Sims, Jr., who is a forensic specialist,

for a warrantless search of the cell phone. (*Id.*). Sims began the warrantless search of the cell phone on May 26, 2017, and continued the search beyond that day. (*Id.*). On June 1, 2017, Plaintiff's parole was formally revoked in connection with the May 23, 2017, parole search. (*Id.*). On June 15, 2017, Defendant Sims completed the forensic search of the Unimax cell phone. (*Id.*). On June 17, 2017, "Plaintiff was released from his parole violation." (*Id.*).

### B. Seizure and Search of LG Cell Phone

On July 6, 2017, Plaintiff was stopped by his parole agent and she seized from Plaintiff an LG cell phone with internet access and a camera. (*Id.*). The parole agent allegedly found images of naked children on the LG cell phone. She placed Plaintiff into custody and booked him into the Kern County Jail on a parole hold. (*Id.*). The parole agent sent the LG cell phone to HSI for forensic analysis. On July 14, 2017, Plaintiff's parole was formally revoked in connection with the July 6, 2017, parole search.[1] (*Id.*). "Plaintiff was released from his parole violation a few days later." (*Id.*). On September 23, 2017, Defendant Sims conducted a warrantless forensic search of the LG cell phone seized from Plaintiff during the July 6, 2017 search. (*Id.*).

### C. Seizure and Search of Three Additional Cell Phones

Between July 17, 2017, and September 23, 2017, Plaintiff's parole agent seized three additional cell phones from Plaintiff. (*Id.*). All three of these cell phones were sent to Defendant Sims for forensic analysis. On September 23, 2017, Defendant Sims conducted a forensic search of the three cell phones. (*Id.*).

### D. Claims

Plaintiff's complaint brings two claims, both alleging violations under the Fourth Amendment because of the warrantless search of his cell phones. Plaintiff's first claim alleges that Defendant Torres accepted the Unimax cell phone "from parole agents on May 26, 2017," and requested that Defendant Sims conduct a warrantless search of the cell phone, with a search of the device occurring after Plaintiff's parole had been revoked. (ECF No. 9, p. 3). Plaintiff's

---

[1] Plaintiff's third amended complaint states that his parole was revoked on July 15, 2017. However, his opposition to the motion to dismiss clarifies that his parole was revoked on July 14, 2017. (ECF No. 54, p. 4).

4

second claim is substantially similar, alleging that Defendant Torress accepted four other cell phones "from parole agents between July 17, 2017, and September 25, 2017," and requested that Defendant Sims conduct a warrantless search, with a search of the devices occurring after Plaintiff's parole had been revoked. (*Id.* at 4).

### E. Screening of Third Amended Complaint

On September 27, 2019, this Court screened Plaintiff's third amended complaint, concluding that, "it state[d] cognizable claims against Defendant Anthony Sims and Defendant Nicholas Torres for violation of Plaintiff's Fourth Amendment right against unreasonable search." (ECF No. 14, p. 11). However, the Court repeatedly noted that this determination was made only "for purposes of screening." (*Id.* at 2, 4, 7, 8, 11). The screening order did not address the defense of qualified immunity.

### F. Federal Indictment

On November 2, 2017, Plaintiff was indicted on federal child pornography charges in connection with the Unimax and LG cell phones seized during the May 23, 2017, and July 6, 2017, parole searches. (*Id.*; *see United States v. Peterson*, Case No. 17-cr-00255-LJO-SKO (Criminal Case)).[2] Plaintiff was arrested on those charges on November 13, 2017. (ECF No. 13, pp. 3-4). On October 8, 2018, Plaintiff, represented by counsel, filed a motion to suppress the Unimax and LG cell phones and the evidence found on them, claiming that HSI violated Plaintiff's Fourth Amendment rights by searching the cell phones after Plaintiff's parole had been formally revoked. (*Id.* at 4; Criminal Case ECF No. 24). Although the government initially opposed the motion (Criminal Case ECF No. 25), after further investigation, the government filed a non-opposition to the motion to suppress (ECF No. 13, p. 4; Criminal Case ECF No. 33). Based on the non-opposition and without additional analysis, the District Court granted the motion to suppress and suppressed the evidence obtained by HSI from the cell phones seized on May 23, 2017 (the Unimax) and July 6, 2017 (the LG). (ECF No. 13, p. 4; Criminal Case ECF No. 35).

\\\

---

[2] The Court may take judicial notice of its own records in other cases, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). The Court takes judicial notice of *United States v. Peterson*, No. 1:17-cr-00255-LJO-SKO, which is the related criminal case that Plaintiff refers to in his third amended complaint.

5

## II. LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974).

## III. MOTION TO DISMISS

### A. Summary of the Parties' Arguments

Defendants move to dismiss Plaintiff's third amended complaint, arguing that *Bivens* does not provide a remedy here and that they are protected by qualified immunity. As to *Bivens*, Defendants argue that this case falls outside those cases in which the Supreme Court has approved an implied damages remedy and that *Bivens* should not be extended to the new context presented by this case. (ECF No. 46-1, pp. 7-10). As to qualified immunity, Defendants argue that the cell phones were properly searched without a warrant because they legally obtained the cell phones and the cell phones remained in police custody until their search. (*Id.* at 10-14). They also argue that, if they violated Plaintiff's Fourth Amendment rights, those rights were not clearly

established, as the case relied upon by Plaintiff is inapposite. (*Id.* at 13-14; *see* ECF No. 56, p. 5).

Plaintiff opposes both of Defendants' arguments. Plaintiff argues that this is not a new context under *Bivens* and that even if it were, special factors indicate *Bivens* should be extended to this context. (ECF No. 54 at 9-19). Plaintiff further contends that his constitutional rights were violated because Defendants were not allowed to search his property after his parole was revoked and that *People v. Hunter*, 140 Cal. App. 4th 1147, 1152 (2006), is the clearly established law alerting Defendants that their conduct was unconstitutional. (*Id.* at 21). Plaintiff also argues that, under the law of the case doctrine, the Court's screening order allowing his claims to proceed prohibits Defendants from now challenging the sufficiency of his third amended complaint. (*Id.* at 7-8).

**B.  Discussion[3]**

**1.  Qualified immunity standards**

"An officer is entitled to qualified immunity under [a two-part test] unless (1) the facts, construed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right, and (2) the right was clearly established at the time of the asserted violation." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). "Clearly established" means that the constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In examining whether a legal principle is clearly established, the principle's contours must be defined to a "high degree of specificity," and not "at a high level of generality." *Id.* at 590 (internal citations omitted). "Such specificity is especially important in the Fourth Amendment context, where" it can be difficult for officers "to determine how the relevant legal doctrine . . .

---

[3] The Supreme Court has noted that the availability of a claim under *Bivens* is "an antecedent issue" to the qualified immunity analysis. *Wood v. Moss*, 572 U.S. 744, 757 (2014). Here, the Court assumes, without deciding, that *Bivens* extends to Plaintiff's Fourth Amendment claims and proceeds to the qualified immunity issue. *See id.* (assuming, without deciding, "that *Bivens* extends to First Amendment claims" and proceeding to address clearly-established prong of qualified immunity); *Iqbal*, 556 U.S. at 675 ("[W]e assume, without deciding, that respondent's First Amendment claim is actionable under *Bivens*.").

7

will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation omitted); *see Wilson v. Layne*, 526 U.S. 603, 615 (1999) (defining pertinent question as "whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful, in light of clearly established law and the information the officers possessed"). However, it is not necessary to identify a case that it is "directly on point." *Wesby*, 138 S. Ct. at 590 (internal citation omitted). Whether a right was clearly established "is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). And "[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

As for the source of clearly established law, "decisional authority of the Supreme Court or [the Ninth] Circuit" is controlling. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).

> On the other hand, when there are relatively few cases on point, and none of them are binding, [a court] may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results. Thus, in the absence of binding precedent, [a court] looks to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts.

*Id.* (internal quotation marks and citations omitted). However, "the Supreme Court has not clarified when state . . . decisions could place a 'statutory or constitutional question beyond debate.'" *Evans v. Skolnik*, 997 F.3d 1060, 1066-67 (9th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). But the Ninth Circuit has concluded that authority that is not from the Supreme Court or Ninth Circuit must "otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (internal citation omitted).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court exercises its discretion to begin with addressing whether there is any clearly established law on

1  point.

2  **2.     Qualified immunity analysis**

3  In keeping with the above discussion, the Court must first define the right allegedly

4  violated "at the appropriate level of specificity before [it] can determine if it was clearly

5  established." *Wilson*, 526 U.S. at 615. Here, Plaintiff's central contention is that Defendants

6  violated his constitutional rights by searching his cell phones after his parole had been

7  purportedly revoked.[4] (ECF No. 54, p. 21). His third amended complaint does not allege that

8  Defendants were aware that his parole had been revoked and acknowledges that at least one

9  search started prior to his parole revocation. (ECF No. 13, p. 6). Moreover, Plaintiff does not

10 dispute that all the cell phones were initially lawfully seized and searched by his parole agent.[5]

11 Nor could he, as the Ninth Circuit in Plaintiff's underlying criminal appeal upheld the validity of

12 the parole searches. *See Peterson*, 995 F.3d at 1068 (concluding that "the parole searches were

13 constitutionally permissible"). Given these factual circumstances, the Court believes the

14 appropriate inquiry is as follows: whether a reasonable federal agent could have believed that

15 conducting a warrantless search of cell phones that were initially lawfully seized and searched by

16 a state parole agent was lawful, when those cell phones belonged to a person whose parole had

17 been revoked at the time of the searches, in light of clearly established law and the information

18 the federal agents possessed.

19 Having defined the right at issue, the Court turns to the protections of the Fourth

20 Amendment in the context of searches. The Fourth Amendment provides:

21 > The right of the people to be secure in their persons, houses, papers,
   > and effects, against unreasonable searches and seizures, shall not be
22 > violated, and no Warrants shall issue, but upon probable cause,
   > supported by Oath or affirmation, and particularly describing the
23 > place to be searched, and the persons or things to be seized.

24

---

[4] While Plaintiff argues that Defendants illegally searched his cell phones, the Court notes that Plaintiff's allegations in his third amended complaint primarily contend that Defendant Sims was the one who searched his cell phones. (*See* ECF No. 13, p. 3).

[5] As to the three other cell phones (other than the Unimax and LG cell phones), Plaintiff's third amended complaint states that his parole agent seized these cell phones but does not specifically state that the parole agent searched them. To the extent that the parole agent did not search these cell phones, the Court concludes that Plaintiff's motion to dismiss should still be granted.

U.S. Const. amend. IV.

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" and thus, "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (second alteration in original) (internal quotation marks and citations omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Id.* at 382.

A relevant line of case law permitting warrantless searches was discussed by the Ninth Circuit in *United States v. Burnette*, 698 F.2d 1038 (9th Cir. 1983). In that case, the Court determined that an initial lawful search of a purse incident to a person's arrest significantly reduced the person's expectation of privacy in the purse. *Id.* at 1049. Because of the reduction of the expectation of privacy in the purse, the Ninth Circuit concluded that a later subsequent warrantless search of the purse, which had remained in police custody, was valid and that the evidence obtained from the search was properly admitted at trial. *Id.* Specifically, the Ninth Circuit held that "once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant." *Id.* Moreover, the Ninth Circuit has extended the reasoning of *Burnette* to the circumstances of a cell phone search. *See United States v. Lustig*, 830 F.3d 1075, 1085 (9th Cir. 2016) (after concluding that "the good-faith exception save[d] the [initial] searches" of cell phones, determining that "*Burnette* fully authorize[d] the later searches" of the cell phones).

Citing this line of authority, Defendants argue that they could have reasonably believed that it was lawful to conduct searches of Plaintiff's cell phones after the cell phones were initially lawfully searched by Plaintiff's parole agent. (ECF No. 56, p. 4).

While Plaintiff does not dispute that his cell phones were initially lawfully searched by his parole agent, he contends that there is clearly established law informing Defendants that their conduct was illegal at the time of the searches. (ECF No. 54, p. 21). Specifically, Plaintiff points to *People v. Hunter*, a 2006 case from the California Court of Appeals. In *Hunter*, law

enforcement performed a warrantless search of a storage unit belonging to John Kevin Hunter, finding evidence of a crime. 140 Cal. App. 4th at 1150. Notably, at the time of the search, Hunter was in custody on a parole hold; however, his parole was not formally revoked until after the search. *Id.* at 1151. The question before the California Court of Appeals was whether the evidence seized from the storage unit should be suppressed based on Hunter's contention that a "parolee who is returned to prison and awaiting a parole revocation hearing is no longer subject to parole searches." *Id.* at 1152. The California Court of Appeals rejected this argument, concluding Hunter was still a parolee because his parole had not formally been revoked and thus he was "governed by the same Fourth Amendment rules that apply to all searches performed on parolees," which rules hold that a "parolee lacks a legitimate expectation of privacy and the state has a substantial interest in supervising parolees and reducing recidivism." *Id.* at 1152, 55.

As an initial matter, *Hunter*, a decision from the California Court of Appeals, cannot create any clearly established right because Plaintiff has failed to show that the purported right established by *Hunter* has been embraced by a consensus of courts. *See Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) ("In any event, the opinions by a federal district court and an intermediate state court are insufficient to create a clearly established right."); *Martinez v. City of Clovis*, 943 F.3d 1260, 1276 (9th Cir. 2019) (declining to rely on Second Circuit case as clearly established law because it had not been embraced by a consensus of courts). Accordingly, *Hunter* fails to establish a clearly established right on this basis alone.

Nevertheless, the case is distinguishable. As Defendants point out, while *Hunter* generally deals with the validity of warrantless searches in connection with the revocation of parole, Plaintiff's cell phones were forensically searched only after being initially seized and searched lawfully by Plaintiff's parole agent. (ECF No. 56, p. 4). Notably, a reasonable federal agent in these circumstances may have believed he could lawfully forensically search the phones that had already been searched because "[t]he contents of an item previously searched are simply no longer private." *Burnette*, 698 F.2d at 1049; *see Lustig*, 830 F.3d at 1085. In short, "the constitutional question presented by this case is by no means open and shut." *Wilson*, 526 U.S. at

11

1   615.

2   Additionally, the Court's own review has not found any case on point, that could serve as clearly established law addressing whether federal agents may lawfully search, after a person's parole is revoked, cell phones without a warrant when the cell phones were initially lawfully searched by a state parole agent. Accordingly, because Defendants' conduct as alleged in the complaint did not violate a clearly established right at the time of the search, Defendants are entitled to qualified immunity.[6]

### 3. Law of the case doctrine

Plaintiff argues that Defendants' motion to dismiss cannot be granted because this Court allowed the case to proceed after screening, which decision becomes the law of the case. (ECF No. 54, p. 7). This argument is not persuasive.

First, the Court's screening order repeatedly noted that it found Plaintiff stated a claim "for purposes of screening," thus indicating the Court did not consider its ruling as foreclosing a motion to dismiss. (ECF No. 14 at 2, 4, 11).

Additionally, courts tend not to apply the law of the case doctrine to issues not addressed in their screening orders. For example, in *Mitchell v. Gipson*, a court in this District rejected a plaintiff's argument at the Rule 12(b)(6) stage that the magistrate judge was bound to the screening order because the defendants articulated grounds to dismiss not considered in the screening order:

> The Magistrate Judge was correct in setting forth the Court's disfavor of 12(b)(6) motions for failure to state a claim that do not take into consideration the prior screening order and simply argue for a different outcome based on the same facts. Defendants' motion, however, is slightly different. . . . Defendants present an argument related to statutory interpretation. As Defendants note in their objections, their motion provided an analysis of the regulation at issue, an analysis that was not performed in the screening order. It is within the Court's power to resolve a motion to dismiss based on question of law.

No. 1:12-CV-00469-LJO-DLB, 2013 WL 10208760, at *1 (E.D. Cal. Dec. 11, 2013) (unreported), *aff'd in relevant part, rev'd on other grounds in part sub nom. Hayes v. Bolen*, 594

---

[6] Having concluded that Plaintiff fails on the clearly-established prong, the Court declines to address the merits of the constitutionality of Defendants' conduct.

F. App'x 420, 421 (9th Cir. 2015) (unreported) ("We reject Hayes's contentions concerning the district court's jurisdiction."); *see also Chavez v. Yates*, No. 1:09-cv-01080-AWI-SKO (PC), 2013 WL 5519594, at *1, n.1 (E.D. Cal. Oct. 3, 2013), *report and recommendation adopted*, 2013 WL 5883670 (Oct. 30, 2013) (applying law of the case in motion to dismiss only "to issues addressed in and determined by the screening order").

Notably, the Court's screening order did not address the defense of qualified immunity or the specific question of whether Defendant's conduct violated a right clearly established at the time. (*See* ECF No. 14). Thus, granting Defendants' motion to dismiss is not precluded by the law of the case doctrine.

## IV. MOTION FOR LEAVE TO FILE SURREPLY

Plaintiff filed a "motion requesting permission to file an answer to Defendant[s'] reply," which the Court construes as a motion for leave to file a surreply, arguing that Defendants' reply raised "several points that are out of context, misleading, and wrong." (ECF No. 61, p. 1). Defendants' opposition argues that Plaintiff's proposed surreply "does nothing more than reiterate arguments he made previously" and thus leave to file a surreply should be denied. (ECF No. 64, p. 2).

"The Court generally views motions for leave to file a surreply with disfavor. However, district courts have the discretion to either permit or preclude a surreply." *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) (citations omitted). "[T]his discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).

Here, Defendants did not raise new arguments in their reply brief, and Plaintiff's proposed surreply is aimed at the arguments Defendants made in their motion to dismiss and reply. The surreply also does not show that Defendants' reply brief made claims that were out of context,

misleading or wrong. Therefore, Plaintiff's motion to file a surreply should be denied.[7]

## V. PLAINTIFF'S MOTIONS TO RECONSTRUE AND AMEND

Plaintiff has filed two related motions. On June 15, 2020, Plaintiff filed a "Request That This Court Reconstrue This Action as an Action Under 42 USC § 1983 or Allow Plaintiff to Amend, Changing It Into 42 USC § 1983." (ECF No. 62). On July 10, 2020, Plaintiff filed a "Request to Amend Complaint Pursuant to Rule 15(a)(2) of the Fed. Rules of Civil Procedure." (ECF No. 65). Both, at their core, concern whether Plaintiff should be permitted to file an amended complaint to bring his case as one under 42 U.S.C. § 1983, not *Bivens*. This request relates to another issue: whether amendment to Plaintiff's complaint is futile. The Court concludes that any such amendment is futile.

Section 1983 does not generally provide for a right of action against federal officers. To state a claim for liability under 42 U.S.C. § 1983, a "plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Place, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citing *Chudacoff v. Univ. Med. Ctr of S. Nev.*, 649 F.3d 1143, 114 (9th Cir. 2011)). Section 1983 "provides no cause of action against federal agents acting under color of federal law." *Billings v. United States*, 57 F.3d at 801; *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1988) ("There is no valid basis for a claim under section 1983, in that [plaintiff's] allegations are against federal officials acting under color of federal law. Section 1983 provides a remedy only for deprivation of constitutional rights by a person acting under color of law of any state or territory or the District of Columbia.") (internal citation omitted)); *Gibson v. United States*, 781 F.2d 1334, 1343 (9th Cir. 1986) ("Federal officers acting under federal authority are immune from suit under section 1983 unless the state or its agents significantly participated in the challenged activity.").

Here, Defendants contend they were operating under federal law—specifically, the PROTECT Our Children Act of 2008, 34 U.S.C. § 21101, *et seq*. (ECF No. 64, pp. 3-5). Plaintiff

---

[7] While the Court recommends denying Plaintiff's motion for leave to file a surreply, it has reviewed the proposed surreply and concludes that it does not change the Court's analysis or recommendation.

points to arguments that the United States made in the Criminal Case that he asserts suggests otherwise. (ECF No. 69, p. 12).

Deciding this issue is not necessary. Here, Defendants are entitled to qualified immunity, which doctrine still applies if this action proceeded under § 1983 rather than *Bivens*. *See F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318 (9th Cir. 1989) (noting that "the immunities recognized in *Bivens* cases are coextensive with the immunities recognized in section 1983 cases"). Therefore, the Court recommends dismissal without leave to amend.

## VI.     REQUEST FOR JUDICIAL NOTICE

Lastly, Plaintiff requests that the Court take judicial notice of certain facts, most of which are facts proffered within his third amended complaint and which Plaintiff now cites to as coming from various documents filed in his underlying criminal case. (ECF No. 93). Plaintiffs' request fails for two reasons. First, while Plaintiff's request is presumably made in connection with the pending motion to dismiss, Plaintiff fails to explain why any particular fact should be judicially noticed, especially when most of the facts are featured in his third amended complaint and have been accepted as true for purposes of addressing Defendants' motion to dismiss. Second, taking judicial notice of the requested facts is ultimately unnecessary because none of the facts requested to be judicially notice would change the outcome of the qualified immunity analysis. Accordingly, Plaintiff's request for judicial notice should be denied.

## VII.    CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1) Defendants' motion to dismiss (ECF No. 46) be GRANTED;
2) Plaintiff's third amended complaint be dismissed, without leave to amend;
3) Plaintiff's motion to file a surreply (ECF No. 61) be DENIED;
4) Plaintiff's motion to reconstrue his complaint (ECF No. 62) be DENIED;
5) Plaintiff's motion for leave to amend his complaint (ECF No. 65) be DENIED; and
6) Plaintiff's request for judicial notice (ECF No. 93) be DENIED.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one

(21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 17, 2021**            /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE